**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) | |
| Plaintiff, | ) | Case No. ______________ |
| v. | ) | JURY TRIAL DEMANDED |
| INTERMOLECULAR, INC., KENNETH H. TRAUB, CHRIS KRAMER, IRWIN FEDERMAN, MARVIN D. BURKETT, GEORGE SCALISE, MATTHEW S. FURNAS, ADAM SCHEER, and JONATHAN SCHULTZ, | ) | CLASS ACTION |
| Defendants. | ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on May 6, 2019 (the "Proposed Transaction"), pursuant to which Intermolecular, Inc. ("Intermolecular" or the "Company") will be acquired by affiliates of Merck KGaA: EMD Group Holding II, Inc. ("Parent") and EMD Performance Semiconductor Services Corp. ("Merger Sub," and together with Parent and Merck KGaA, "Merck").

2. On May 6, 2019, Intermolecular's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Merck. Pursuant to the terms of the Merger Agreement, Intermolecular's stockholders will receive $1.20 in cash for each share of Intermolecular common stock they own.

3. On May 28, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Intermolecular common stock.

9. Defendant Intermolecular is a Delaware corporation and maintains its principal executive offices at 3011 N. First Street, San Jose, California 95134. Intermolecular's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "IMI."

Intermolecular is a party to the Merger Agreement.

10. Defendant Kenneth H. Traub is Chairman of the Board of the Company.

11. Defendant Chris Kramer is President, Chief Executive Officer, and a director of the Company.

12. Defendant Irwin Federman is a director of the Company.

13. Defendant Marvin D. Burkett is a director of the Company.

14. Defendant George Scalise is a director of the Company.

15. Defendant Matthew S. Furnas is a director of the Company.

16. Defendant Adam Scheer is a director of the Company.

17. Defendant Jonathan Schultz is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Intermolecular (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of April 30, 2019, there were approximately 49,758,224 shares of Intermolecular common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if

defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

26. According to its website, Intermolecular is the trusted partner for advanced materials innovation. Advanced materials are at the core of innovation for a wide range of industries including semiconductors, consumer electronics, automotive, and aerospace. The Company has a ten-year track record helping leading companies accelerate and de-risk materials innovation.

27. On May 6, 2019, Intermolecular's Board caused the Company to enter into the Merger Agreement with Merck.

28. Pursuant to the terms of the Merger Agreement, Intermolecular's stockholders will receive $1.20 in cash for each share of Intermolecular common stock they own.

29. According to the press release announcing the Proposed Transaction:

> Intermolecular, Inc. (NASDAQ: IMI) has signed a definitive agreement pursuant to which a wholly owned subsidiary of Merck KGaA, Darmstadt, Germany, a leading science and technology company, will acquire Intermolecular for $1.20 per share in an all cash transaction, representing an equity value of Intermolecular of approximately $62 million. The acquisition has been unanimously approved by Intermolecular's Board of Directors and the Executive Board of Merck KGaA, Darmstadt, Germany. . . .
>
> News Release
>
> The transaction is expected to close in the second half of 2019, subject to the approval of Intermolecular's stockholders, clearance by the Committee on Foreign Investment in the United States (CFIUS) and the satisfaction of other customary closing conditions.
>
> Merck KGaA, Darmstadt, Germany, will acquire Intermolecular through its wholly owned subsidiary EMD Group Holding II, Inc.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

30. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

31. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

32. The Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Cowen and Company, LLC ("Cowen").

33. With respect to the Company's financial projections, the Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate Adjusted EBITDA; (ii) cash taxes; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

34. With respect to Cowen's Analysis of Selected Publicly Traded Companies, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Cowen in the analysis.

35. With respect to Cowen's Analysis of Selected Transactions, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Cowen in the analysis.

36. With respect to Cowen's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the Company's projected unlevered free cash flow for the six-month period ending on December 31, 2019 and the full fiscal years ending in 2020 through 2023 and all underlying line items; (ii) the terminal value of the Company; (iii) the individual inputs and assumptions underlying the discount rates ranging from 16.5% to 18.5% and the range of perpetuity growth rates of 8.3% to 12.8%; (iv) Cowen's basis for utilizing terminal multiples of Adjusted EBITDA ranging from 4.0x to 6.0x; and (v) the Company's estimated United States federal and state net operating loss carry forwards that were used by Cowen in the analysis.

37. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy

Statement: (i) Background of the Merger; (ii) Reasons for the Merger and Recommendation of the Board; (iii) Management Projections; and (iv) Opinion of Cowen and Company, LLC.

39. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Intermolecular

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Intermolecular is liable as the issuer of these statements.

42. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

43. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

44. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

45. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

46. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

47. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Intermolecular within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Intermolecular and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

52. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 6, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com